# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 3:08-cr-16 |
| v. | ) | |
| | ) | JUDGE KIM R. GIBSON |
| ARIEL L. JEFFERS, | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

Pending before the Court are Defendant Ariel L. Jeffers' pro se "Motion to Reduce Sentence Pursuant to the First Step Act of 2018" (ECF No. 369-2) and counseled "Motion to Reduce Sentence Pursuant to 18 U.S.C. 3582(c)(1)(A)(i)[.]" (ECF No. 372). Because Jeffers' counseled Motion largely contains the same arguments as his pro se Motion, the Court will confine its analysis to his counseled Motion.[1] Jeffers' Motions are fully briefed (ECF Nos. 369, 372, 376, 380, 382, 384, 385, 388) and ripe for disposition. For the following reasons, the Court **DENIES** Jeffers' Motions.

## I.    Background

On May 13, 2008, a grand jury returned a two-count Indictment against Jeffers, charging him with: (1) distribution of less than five (5) grams of a mixture and substance containing a

---

[1] Jeffers does advance one unique argument in his pro se motion—that he is entitled to a sentence reduction under the 2018 First Step Act. (ECF No. 369-2). The Third Circuit has held that "a conviction under [21 U.S.C.] § 841(a)(1) and § 841(b)(1)(C) is not a 'covered offense' within the meaning of the First Step Act." *United States v. Birt*, 966 F.3d 257, 265 (3d Cir. 2020). In this case, Jeffers plead guilty to distributing "less than five (5) grams of a mixture and substance containing a detectable amount of cocaine base, commonly known as "crack," a Schedule II controlled substance. *In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C)."* (ECF No. 1 at 1; ECF No. 237) (emphasis added). Therefore, because Jeffers' crime of conviction is not a "covered offense" within the meaning of the First Step Act, he is not entitled to a sentence reduction pursuant to that legislation. *Birt*, 966 F.3d at 265.

detectable amount of cocaine base (Count One), and (2) unlawful possession of a firearm by a convicted felon (Count Two). (ECF No. 1 at 1–2). On January 12, 2009, a jury returned a guilty verdict on Count Two of the Indictment. (ECF No. 156). On March 16, 2011, Jeffers pleaded guilty to Count One. (ECF No. 237). On October 4, 2011, this Court sentenced Jeffers to 180 months of imprisonment at Count One and 72 months of imprisonment at Count Two, to be served concurrently, followed by a 3-year term of supervised release. (ECF Nos. 267, 268).

Jeffers is currently incarcerated at United States Penitentiary Lee ("USP Lee"), with an anticipated release date of April 15, 2025. *Find an Inmate,* FED. BUREAU OF PRISONS, (last visited December 19, 2022), https://www.bop.gov/inmateloc (select "Find by Name" and search for "Ariel Jeffers").

Jeffers filed a Motion to Reduce Sentence Pursuant to 18 U.S.C. Section 3582(c)(1)(A)(i) on February 15, 2022. (ECF No. 372). In this motion, Jeffers asks the Court to "reduce his prison sentence to supervised release with a condition of home confinement based on his underlying medical conditions." (*Id.* at 2).  In support of his motion for compassionate release, Jeffers argues that: (1) extraordinary and compelling reasons warrant a sentence reduction,[2] (2) a reduction in his sentence is consistent with the policy statements issued by the Sentencing Commission, and (3) the Section 3553(a) factors support his request to be released "to supervised release with a condition of home confinement." (*Id.*).

---

[2] In his initial motion, Jeffers argues that the following are both extraordinary and compelling reasons that support his request for compassionate release: (1) his assertion that he would not be deemed a career offender if he were resentenced today, a reality that would lower his sentencing guidelines range and (2) his medical conditions in light of the COVID-19 pandemic and the conditions at USP Lee. (ECF No. 372 at 4–10).

On February 24, 2022, Jeffers filed a Supplement to his motion, which contained a letter identifying "a future employment opportunity and speak[ing] to Mr. Jeffers['] value in the workplace." (ECF No. 376).

On March 29, 2022, the Government filed a Response in Opposition to Jeffers' motion. (ECF No. 380). In its response, the Government argues that Jeffers' motion should be denied for four reasons. (*Id.* at 1-2). First, a compassionate release motion is not the proper vehicle to address Jeffers' career offender designation. (*Id.* at 1). Second, even if it were the appropriate vehicle, Jeffers has not properly exhausted his administrative remedies with respect to his career offender designation. (*Id.*). Third, neither Jeffers' medical conditions, nor his generalized concerns regarding COVID-19 at USP Lee constitute extraordinary and compelling reasons that would merit compassionate release. (*Id.* at 2). Fourth, even if the Court found that the reasons offered by Jeffers are extraordinary and compelling, the sentencing factors under Section 3553(a) weigh against compassionate release. (*Id.*).

On April 25, 2022, Jeffers filed a Reply to the Government's Response. (ECF No. 384). Jeffers argues that he has properly exhausted his administrative remedies in all respects. (*Id.* at 1–3). Further, Jeffers asserts that if he were resentenced today, he would no longer be subject to the sentencing enhancement under Section 2K2.1(a)(2) of the sentencing guidelines because his convictions for resisting arrest and conspiracy do not qualify for this enhancement. (*Id.* at 4). Accordingly, Jeffers contends that because he: (1) would not be a career offender if he were resentenced today and (2) would not be subject to the sentencing enhancement found in Section 2L2.1(a)(2) if he were resentenced today his guideline range would now be 51 to 63 months. (*Id.*)

Jeffers also filed a Supplement to this Reply on July 5, 2022. (ECF No. 385). Jeffers contends that the recent Supreme Court decision in *Concepcion v. United States*, 142 S. Ct. 2389 (2022), allows district courts "to consider intervening changes of law or fact in exercising their discretion to reduce a sentence." (*Id.* at 2). Therefore, Jeffers asserts that *Concepcion* permits this court to "exercise discretion and take into consideration Mr. Jeffers' outdated career offender status." (*Id.* at 3).

On July 11, 2022, the Government filed its Response to Defendant's Supplement to Reply. (ECF No. 388). The Government states that, in *Concepcion*, the Supreme Court was addressing "a defendant's motion for a sentence reduction under Section 404 of the First Step Act[.]" (*Id.* at 2). The Government therefore argues that *Concepcion* is inapplicable in this case because Jeffers is seeking relief "under 18 U.S.C. §3582(c)(1)(A)(i)—not Section 404 of the First Step Act." (*Id.*).

## II.     Exhaustion of Administrative Remedies

As a threshold matter, the Court must determine whether Jeffers has properly exhausted his administrative remedies with respect to the arguments he now advances before this Court. *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (finding that a failure to comply with Section 3582's exhaustion requirement "presents a glaring roadblock foreclosing compassionate release"). In doing so, the Court will: (1) first, outline Jeffers' arguments in support of his motion for compassionate release; (2) second, examine the submissions that Jeffers made to the warden of his facility; (3) third, outline the law in this area; and (4) fourth, analyze whether Jeffers has exhausted his administrative remedies with respect to each of his arguments.

### A.     Jeffers' Arguments in Support of his Motion

As the Court noted earlier, Jeffers advances three arguments that he contends equate to extraordinary and compelling reasons in favor of his early release. (ECF Nos. 372, 384). First, Jeffers contends that the COVID-19 pandemic and his underlying medical conditions, which he asserts increase his risk for severe illness or death, constitute extraordinary and compelling reasons in support of his early release. (ECF No. 372 at 8–10). Second, Jeffers argues that his 15-year prison sentence was "clearly a product of the career offender enhancement[,]" but under *United States v. Nasir*, 17 F.4th 459 (3d Cir. 2021),[3] he is no longer a career offender. (ECF No. 372 at 4–8). Finally, Jeffers argues that, if he were sentenced today, he would not be subject to an enhancement under Section 2K2.1(a)(2) of the sentencing guidelines because his "convictions for resisting arrest and conspiracy do not qualify for this enhancement." (ECF No. 384 at 4). Therefore, because Jeffers believes that he would not be a career offender and would not be subject to the enhancement found in Section 2K2.1(a)(1) of the guidelines if he were sentenced today, he states that his current guideline range for his term of imprisonment would be 51 to 63 months. (*Id.*).

**B.     Jeffers' Submissions to the Warden at USP Lee**

Jeffers has submitted two requests for compassionate release to the warden at USP Lee. (ECF No. 372 at 3).

In his first request, dated July 18, 2020, Jeffers requested early release based on concerns related to the COVID-19 pandemic. (ECF No. 373-3). For example, Jeffers asserted that USP Lee

---

[3] In *Nasir*, the Third Circuit held that "inchoate crimes are not included in the definition of 'controlled substance offense' given in section 4B1.2(b) of the sentencing guidelines[,]" meaning that inchoate crimes do not constitute predicate offenses for purposes of determining career offender status under the sentencing guidelines. *Id.* at 468–72.

"is not equipped to handle the COVID-19 pandemic. It is impossible for social distancing." (*Id.*). Further, Jeffers stated that his own health problems—including blood in his stool, his "weight problem," and his high blood pressure—put him at greater risk of severe illness if he contracts COVID-19. (*Id.*). However, in his July 18, 2020, request, Jeffers did not mention his career offender status, *Nasir*, or Section 2K2.1(a)(2) of the Sentencing Guidelines. (*Id.*).

On July 25, 2020, the warden at USP Lee denied Jeffers' request for compassionate release. (ECF No. 372-4). The warden stated that Jeffers "requested a Compassionate Release based on [his] concerns about COVID-19. After careful consideration, your request is denied." (*Id.*).

In Jeffers' second request for compassionate release, dated August 3, 2021, Jeffers argued that he should not have been sentenced as a career offender because one of his predicate convictions came from a guilty plea that he entered in 1997, when he was 20 years old. (ECF No. 372-6). Specifically, Jeffers asserted that, because of his youth at the time he entered his guilty plea, his plea was not knowing and voluntary, meaning that his career offender designation was inappropriate. (*Id.*). Once again, Jeffers did not mention *Nasir* or Section 2K2.1(a)(2) of the sentencing guidelines in his request to the warden. (*Id.*).

On September 16, 2021, the warden at USP Lee denied Jeffers' request for compassionate release. (ECF No. 380-2 at 4). The warden concluded that, due to the circumstances of Jeffers' offense and the information he provided, Jeffers' circumstances were not extraordinary or compelling. (*Id.*).

C.      **Legal Standard Regarding Exhaustion of Administrative Remedies**

Under Section 3582(c)(1)(A), a defendant may file a motion seeking a modification to a term of imprisonment only "after the defendant has fully exhausted all administrative rights to

appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). The "Third Circuit recently confirmed that either of § 3582(c)(1)(A)'s options (acting independently) [is] sufficient to satisfy the exhaustion requirement." *United States v. Davidson*, No. 2:16-CR-00139-2, 2020 WL 4877255, at *5 (W.D. Pa. Aug. 20, 2020) (citing *United States v. Harris*, 973 F.3d 170, 171 (3d Cir. 2020)) (noting that the court in *Harris* rejected the argument that a defendant "is required to completely exhaust the administrative remedy process if the warden denies a defendant's request within thirty (30) days of receiving it"). Given the Third Circuit's decision in *Harris*, if an inmate files a "motion for relief … in court more than 30 days after the warden receives an inmate's request for compassionate release, the court may entertain the motion." *United States v. Grasha*, No. 18-CR-325, 2020 WL 5424002, at *5 (W.D. Pa. Sept. 10, 2020).

Further, as the Court noted earlier, the Third Circuit has held that an inmate's failure to comply with Section 3582's exhaustion requirement "presents a glaring roadblock foreclosing compassionate release[.]" *Raia*, 954 F.3d at 597 ("Given BOP's shared desire for a safe and healthy prison environment, we conclude that *strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance*.") (emphasis added). Indeed, the exhaustion requirement "is mandated by statute and cannot be waived by the court or the government." *United States v. Jeffries*, No. 14-CR-106, 2021 WL 2000555, at *5 (W.D. Pa. May 19, 2021). Therefore, the "exhaustion requirement is strictly construed, and courts within the Third Circuit hold that 'issue exhaustion' applies to § 3582(c)(1)(A)." *Id.* at *5–7 (finding that an inmate did not exhaust his administrative remedies with respect to his claim that he needed to act as the caregiver for his

father because his request to the warden did not reference his father or his need to provide a family member care).

**D.     Jeffers has Exhausted his Administrative Remedies with Respect to his COVID-19 Claims, but he has not Exhausted his Administrative Remedies with Respect to his Sentencing-Related Arguments**

**1.        Jeffers' COVID-19 Claims**

Jeffers and the Government agree that Jeffers has exhausted his administrative remedies with respect to his COVID-19 claims. (ECF No. 372 at 2-4; ECF No. 380 at 5–6). Nonetheless, the Court must independently determine whether the exhaustion requirement is satisfied. *Raia*, 954 F.3d at 597.

Here, Jeffers submitted a request for compassionate release to the warden of USP Lee on July 18, 2020. (ECF No. 372-3). In his request, Jeffers raised the following concerns related to COVID-19: (1) purported issues at USP Lee relative to the pandemic, (2) blood in his stool, (3) his "weight problem," and (4) his high blood pressure. (*Id.*). On August 4, 2020, the warden of USP Lee denied Jeffers' request. (ECF No. 372-4).

On January 12, 2021, the Court received Jeffers' pro se motion. (ECF No. 369). Further, on February 15, 2022, Jeffers filed his counseled motion, in which he raised the following concerns regarding COVID-19: (1) purported issues at USP Lee relative to the pandemic, (2) his weight, (3) his high blood pressure, and (4) the present state of the COVID crisis.[4] (ECF No. 372 at 8–10).

---

[4] Although Jeffers did not raise the state of the COVID-19 pandemic as of December 2022 in his July 2020 request to the warden, he obviously could not have done so. But Jeffers plainly did raise the issue of COVID-19 in his July 18, 2020, request for compassionate release. (ECF No. 372-3). And the warden at USP Lee certainly would have known that the COVID-19 pandemic is a constantly changing situation when he responded to Jeffers' request. Therefore, the Court finds that it is highly appropriate to consider the current state of the COVID-19 pandemic in resolving Jeffers' motion. *United States v. Valenta*, No. 15-CR-161, 2020 WL 1689786, at *1 (W.D. Pa. Apr. 7, 2020) (one "of the purposes for requiring prisoners to exhaust their

Therefore, because Jeffers filed his motion in this Court more than thirty days after the warden of USP Lee received his request for compassionate release, and because he raised the same issues with the warden that he now raises with the Court, the Court finds that Jeffers has exhausted his administrative remedies with respect to his COVID-19 concerns.

### 2.   Jeffers' Arguments Regarding His Career Offender Status in Light of *Nasir*

Turning to Jeffers' arguments regarding his career offender status, the Court begins by noting that one "of the purposes for requiring prisoners to exhaust their administrative remedies before bringing a claim in federal court is to give the BOP an opportunity to address the issue." *United States v. Valenta*, No. 15-CR-161, 2020 WL 1689786, at *1 (W.D. Pa. Apr. 7, 2020) (citing *Woodford v. Ngo*, 548 U.S. 81, 89 (2006)); *Davidson*, 2020 WL 4877255, at *13 (stating that "the fundamental premise of § 3582(c)(1)(A)'s exhaustion requirement is to give the BOP the first opportunity to consider [an inmate's] overall medication condition (including consideration of those concerns in the context of the COVID-19 pandemic)").

With that purpose in mind, the Court reiterates that Jeffers *did* mention his career offender status in his August 2021 request to the warden at USP Lee, (ECF No. 376-6), but he *did not* assert that he is no longer a career offender *because of Nasir* in either of his submissions to the warden at his facility. (ECF No. 372-3; ECF No. 372-6). The Court declines to find that, by simply raising the issue of his career offender status, Jeffers alerted the warden that *Nasir* formed part of the basis for his argument. Indeed, the Court is highly reluctant to reach a conclusion that would effectively require wardens in situations such as these to research an inmate's criminal history, as well as all

---

administrative remedies before bringing a claim in federal court is to give the BOP an opportunity to address the issue") (citing *Woodford v. Ngo*, 548 U.S. 81, 89 (2006)).

possible reasons why an inmate may no longer be considered a career offender, before responding to an inmate's motion for early release from prison. If Jeffers wants to argue that he should be granted compassionate release in light of *Nasir* before this Court, he needs to first raise that issue with the warden at his facility. *United States v. Wood*, No. 16-CR-00035, 2022 WL 17465336, at *3–4 (W.D. Pa. Dec. 6, 2022) (finding that an inmate's statement to the warden that he was requesting compassionate release based on "New Rule of Law" did not alert the warden that the inmate was arguing he was improperly sentenced as an Armed Career Criminal under the Armed Career Criminal Act); *United States v. Frezzell*, No. 17-CR-0208, 2022 WL 10513775, at *5 (W.D. Pa. Oct. 17, 2022) ("This Court is mindful of the underlying rational of the exhuasiton element having not been met where … all of the arguments presented to this Court were not presented to the BOP.").

Therefore, because: (1) Congress requires exhaustion of administrative remedies before filing a motion for compassionate release in federal court, (2) the Third Circuit mandates strict compliance with the statutory exhaustion requirement, and (3) considering Jeffers' *Nasir*-based argument at this time would frustrate one of the purposes of the exhaustion requirement, the Court finds that Jeffers has failed to exhaust his administrative remedies with respect to his

argument that he is no longer a career-offender in light of *Nasir*.[5] Accordingly, the Court will not

further consider this argument at this time.[6]

---

[5] Even if the Court were to: (1) address the merits of Jeffers' contention that he is no longer a career offender in light of *Nasir* and (2) find that he would not be a career offender if he were to be sentenced today, the Court would still find that Jeffers' *Nasir*-based argument does not constitute an extraordinary and compelling reason in support of compassionate release.

The Third Circuit has held that the "duration of a lawfully imposed sentence does not create an extraordinary or compelling circumstance." *United States v. Andrews*, 12 F.4th 255, 260–61 (3d Cir. 2021). Therefore, a nonretroactive change to a mandatory minimum sentence is not a basis for compassionate release. *Id.* at 261. But that is not to say that changes to the sentencing landscape have no bearing on a compassionate release motion: "in holding that the statutorily required sentence or Congress's nonretroactive sentencing reductions are not extraordinary and compelling reasons for purposes of § 3582(c)(1)(A), we are not saying that they are always irrelevant to the sentence-reduction inquiry." *Id.* at 262. If a "prisoner successfully shows extraordinary and compelling circumstances, the current sentencing landscape may be a legitimate consideration for courts at the next step of the analysis when they weigh the § 3553(a) factors." *Id.*

So, then, under *Andrews*, a nonretroactive change to a statutory mandatory minimum is not an extraordinary and compelling reason supporting early release from prison. But if an inmate shows some *other* extraordinary and compelling reason in support of early release, the Court may then consider the statutory change when weighing the Section 3553(a) factors.

Applying *Andrews* to the same *Nasir*-based argument that Jeffers advances in this case, the United States District Court for the District of New Jersey found that "*Nasir's* nonretroactive interpretation of the career offender enhancement under the Sentencing Guidelines does not constitute extraordinary and compelling circumstances[.]" *United States v. Henderson*, 15-CR-0329 (ES), 2022 WL 1617678, at *3 (D.N.J. May 23, 2022) (citing *United States v. Muhammad*, No. 21-1311, 2022 WL 296593, at *2 (3d Cir. Feb. 1, 2022)) (noting that the Third Circuit "*never* held that *Nasir* applies retroactively on collateral review") (emphasis added)); *see also United States v. Gordon*, No. 22-1853, 2022 WL 14365245, at *1 (3d Cir. Oct. 25, 2022) ("[O]ur ruling in *Nasir* does not provide the [defendant/inmate] with an extraordinary and compelling circumstance for early release."). Indeed, "guided by the Third Circuit's holding that a nonretroactive change *in a statute* cannot be an extraordinary and compelling reason to justify release," the District of New Jersey was not persuaded "that a nonretroactive interpretation *of the Guidelines* warrants release[.]" *Henderson*, 2022 WL 1617678, at *3 (internal quotation marks and citation omitted) (emphasis in original); *see also United States v. Georgacarakos*, No. 21-1549, 2022 WL 327013, at *1 (3d Cir. Feb. 3, 2022) (holding that the district court did not err in denying an inmate's motion for compassionate release where the inmate's lone argument was that a nonretroactive change in sentencing law would mean that he would no longer be a career offender if he were resentenced as of the date of filing his motion).

In like fashion, even if Jeffers (1) had properly exhausted his *Nasir*-based argument and (2) would not be deemed a career offender if he were sentenced today, this Court would still find, in light of *Andrews*, that a nonretroactive change in how a guideline is interpreted does not constitute an extraordinary and compelling reason for compassionate release.

**3. Jeffers' Arguments Based on Section 2K2.1(a)(2) of the Sentencing Guidelines**

With respect to Jeffers' argument that he would not be subject to the sentencing enhancement found in Section 2K2.1(a)(2) of the sentencing guidelines if he were sentenced today, Jeffers did not raise this issue in either of his requests to the warden at USP Lee. (ECF No. 372-3; ECF No. 372-6). Therefore, this issue is not properly before the Court, and the Court will not consider it further. *Jeffries*, 2021 WL 2000555, at *5–7 (finding that an inmate did not exhaust his administrative remedies with respect to his claim that he needed to act as the caregiver for his father because his request to the warden did not reference his father or his need to provide a family member care).

In sum, the only arguments that Jeffers has properly exhausted are his arguments pertaining to COVID-19. Therefore, the Court must consider whether those arguments satisfy the other requirements of Section 3582(c)(1)(A).

## III. Discussion

---

[6] The Court notes that Jeffers argues that the Supreme Court's decision in *Concepcion v. United States*, 142 S. Ct. 2389 (2022), "permits this Honorable Court to exercise discretion and take into consideration Mr. Jeffers' outdated career offender status." (ECF No. 385 at 3). The Court finds that *Concepcion* does not alter this Court's holding in this case, for two reasons.

First, *Concepcion* said nothing about exhausting administrative remedies. 142 S. Ct. 2399. In other words, *Concepcion* does not change the fact that Jeffers needed to exhaust his *Nasir*-based argument before bringing it to this Court. Therefore, *Concepcion* does not change the fact that Jeffers' *Nasir*-based argument is not properly before the Court given Jeffers' failure to first present that argument to the warden at his facility.

Second, the Third Circuit has found that *Andrews* was not abrogated by *Concepcion*, but rather the two decisions are in harmony with each other. *United States v. Bledsoe*, No. 22-2022, 2022 WL 3536493, at *2 (3d Cir. Aug. 18, 2022). Therefore, in light of *Andrews* and *Concepcion*, the Court persists in its finding that, even if Jeffers had properly exhausted his *Nasir*-based argument, and even assuming without deciding that Jeffers would not be deemed a career offender if he were sentenced today, a nonretroactive change in how a guideline is interpreted does not constitute an extraordinary and compelling reason for compassionate release.

A.      Legal Framework: Section 3582(c)(1)(A)

"A federal court generally 'may not modify a term of imprisonment once it has been imposed.'" *Dillon v. United States*, 560 U.S. 817, 819 (2010) (quoting 18 U.S.C. § 3582(c)). A court may only alter a sentence pursuant to statutory authorization. *United States v. Washington*, 549 F.3d 905, 917 (3d Cir. 2008). Congress provided such statutory authorization by amending 18 U.S.C. § 3582(c) to permit, in certain circumstances, an incarcerated person to petition the court for a modification to his or her term of imprisonment. First Step Act of 2018, Pub. L. No. 115-391, § 603, 132 Stat. 5194, 5239. Section 3582(c)(1)(A) provides the following:

(1) in any case—

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a), to the extent that they are applicable, if it finds that—

>> (i) extraordinary and compelling reasons warrant such a reduction; or

>> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

>>> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

Although the First Step Act added a procedure for prisoner-initiated motions, the rest of the compassionate-release framework remained unchanged. *United States v. Andrews*, 12 F.4th 255, 258 (3d Cir. 2021). A prisoner's motion for compassionate release may be granted if a court finds that: (1) sentence reduction is warranted by extraordinary and compelling reasons; (2) sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission; and (3) sentence reduction is supported by the traditional sentencing factors under Section 3553(a), to the extent they are applicable. *Id.* (citing 18 U.S.C. § 3582(c)(1)(A)). The applicable policy statements require courts to assess the defendant's "danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *United States v. Neal*, No. 2:08-CR-00628-JMG-5, 2020 WL 5993290, at *4 (E.D. Pa. Oct. 9, 2020) (citing U.S.S.G. § 1B1.13(2)).

**B.  Jeffers Has Not Shown "Extraordinary and Compelling Reasons" to Warrant a Reduction to His Term of Imprisonment**

The Court now turns to whether Jeffers' concerns related to COVID-19 constitute extraordinary and compelling reasons that warrant compassionate release. The Court finds that they do not.

**1.  The Parties' Arguments**

Jeffers asserts three COVID-related arguments that he contends constitute extraordinary and compelling reasons in favor of his compassionate release: (1) his medical conditions put him at a higher risk for severe illness or death from COVID-19, (2) USP Lee is not equipped to properly handle COVID-19, and (3) the COVID-19 variants such as Delta and Omicron further increase his risk of serious illness or death. (ECF No. 372 at 8–10).

With respect to his medical conditions, Jeffers states that he "has a BMI of 29.6 and is classified as overweight … [and] [o]besity triples the risk of hospitalization from a COVID infection." (*Id.* at 8).  He further avers that he "has exhibited high blood pressure and has a family history of hypertension … [and] [h]e has been screened for hypertension." (*Id.*). He also contends that, per the Centers for Disease Control and Prevention ("CDC"), "hypertension may increase the risk of serious illness from COVID-19." (*Id.*).

With respect to USP Lee's capacity to handle the COVID-19 pandemic, Jeffers states that the facility "has been hard hit" by COVID-19 and the conditions there are "dangerous and increase the risk of exposure." (*Id.* at 9).

Finally, Jeffers argues that the "present state of the COVID crisis[,]" and particularly the Delta and Omicron variants, will increase the likelihood of contracting COVID-19 because both variants are highly contagious. (*Id.* at 9–10).

In response, the Government contends that "neither Jeffers' medical conditions, nor his generalized complaints about the COVID-19 pandemic, constitute extraordinary and compelling reasons[.]" (ECF No. 380 at 2). Specifically, the Government argues that COVID-19 poses a threat to "every non-immune person in the country[,]" and it alone is not an extraordinary and compelling reason for compassionate release. (*Id.* at 10). Further, the Government asserts that Jeffers' refusal of the COVID-19 vaccine undermines his claim that he should be granted compassionate release. (*Id.* at 11–14). And the Government contends that, because Jeffers tested positive for COVID-19 and experienced minimal symptoms, "[h]is symptom-free recovery . . . further undermines his claim that he will likely experience dire consequences from infection." (*Id.*

at 13–14). Finally, the Government argues that the statistics show that USP Lee has widespread vaccination of staff and inmates, which further mitigates Jeffers' risk of infection. (*Id.* at 14).

### 2.    Legal Standard: Extraordinary and Compelling Reasons

"Congress did not define 'extraordinary and compelling reasons' except to provide 'rehabilitation … alone' does not suffice." *United States v. Brooks*, No. 20-CR-91, 2022 WL 1173196, at *4 (W.D. Pa. Apr. 20, 2022) (quoting *United States v. Adeyemi*, 470 F. Supp. 3d 489, 499 (E.D. Pa. 2020)); *see also* 28 U.S.C. § 994(t). Rather, Congress delegated the authority to define "extraordinary and compelling reasons" to the United States Sentencing Commission. *See* 28 U.S.C. § 994(t) (providing that the Sentencing Commission "shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"). The United States Sentencing Commission has defined "extraordinary and compelling reasons" to include four categories of reasons: (1) the medical condition of the defendant; (2) the age of the defendant; (3) the family circumstances of the defendant; and (4) "Other Reasons—[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the [other three reasons]." U.S.S.G. § 1B1.13 cmt. n.1.  As a result of the First Step Act, many courts have concluded that the "catch-all" category applies to both the BOP Director and the courts. *United States v. Sabot*, No. 2:14-CR-39, 2020 WL 6274983, at *2 (W.D. Pa. Oct. 26, 2020).

The Third Circuit has held that district courts are not bound by the policy statement set forth in the sentencing guidelines when considering prisoner-initiated motions. *Andrews*, 12 F.4th at 259. However, the Third Circuit has also indicated that a district court does not err when

consulting the "text, dictionary definitions, and the policy statement to form a working definition of 'extraordinary and compelling reasons.'" *Id.* at 260. Indeed, the Third Circuit has found that the "policy statement's descriptions of extraordinary and compelling circumstances can 'guide [the] discretion [of the district court] without being conclusive.'" *Id.* (quoting *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020)).

Looking to dictionary definitions of extraordinary and compelling, courts in this District have stated that, "at a minimum, § 3582(c)(1)(A)(i) requires a justification for release that is both unusual (i.e., unique to the inmate, and beyond the ordinary hardship of prison) and significant (i.e., serious enough to make release appropriate)." *Brooks*, 2022 WL 1173196, at *5 (quoting *United States v. Somerville*, 463 F. Supp. 3d 585, 595–96 (W.D. Pa 2020)).

Additionally, in considering the impact of the COVID-19 pandemic on the "extraordinary and compelling reasons" offered by a prisoner for compassionate release, "the mere 'existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner[.]'" *Somerville*, 463 F. Supp. 3d at 596 (quoting *United States v. Roeder*, 807 F. App'x 157, 161 n.16 (3d Cir. 2020)). Rather, a prisoner "must at least show: (1) a sufficiently serious medical condition, or advanced age placing the prisoner at a uniquely high risk of grave illness or death if infected by COVID-19; and (2) an actual, non-speculative risk of exposure to COVID-19 in the facility where the prisoner is held." *Id.* at 597.

More recently, however, in light of the proliferation and availability of the COVID-19 vaccine, "[e]ven if an inmate has serious underlying medical conditions and faces a non-speculative risk of exposure to the COVID-19 virus, the vaccine may prevent that inmate from

contracting the virus or significantly reduce that inmate's risk of infection or reinfection." *Brooks*, 2022 WL 1173196, at *5 (citing *United States v. Rhodes*, No. 15-CR-23, 2021 WL 4460031, at *4 (W.D. Pa. Sept. 29, 2021)); *see also United States v. Gatson*, No. 22-2443, 2022 WL 7857288, at *1 (3d Cir. Oct. 14, 2022) ("As the District Court noted, [the defendant/inmate] is fully vaccinated, which reduces his risk of serious illness."). Therefore, a court must determine whether an inmate has proven that: (1) he faces a "uniquely high risk of grave illness or death if infected or reinfected by the COVID-19 virus, considering his underlying medical conditions and age and the protective effects of the vaccine;" and (2) he "faces a non-speculative risk of contracting or recontracting the COVID-19 virus, considering both the risk of exposure [at his current facility] and the preventative effects of the vaccine." *Brooks*, 2022 WL 1173196, at *5

3. **Analysis**

a. **Jeffers' Medical Conditions in Light of the COVID-19 Pandemic, Especially When Coupled with his Unexplained Refusal of the Vaccine do not Constitute Extraordinary and Compelling Reasons for Compassionate Release**

The Court begins its analysis by noting that Jeffers was offered the Pfizer vaccine, which he refused. (ECF No. 382 at 63, 71). The Court further notes that Jeffers has not provided an explanation as to why he declined the vaccine. (ECF Nos. 372, 376, 384, 385).

These facts are critical because, according to the CDC, vaccines "reduce your risk of severe illness" from COVID-19. *COVID-19 Vaccines Work*, CTR. FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html (last visited Dec. 19, 2022). And the Third Circuit has held that when an inmate refuses a COVID-19 vaccine without just cause, that unexplained refusal permits a district court to find that the inmate has

not offered an extraordinary and compelling reason in support of compassionate release. *United States v. Estevez-Ulloa*, No. 21-2432, 2022 WL 1165771, at *2 (3d Cir. Apr. 20, 2022) ("Inmates who refuse the vaccine without just cause forego a powerful protection against illness; they cannot claim that they are at serious risk while declining a potent tool to reduce that very risk."); *see also United States v. Smith*, No. 16-CR-137, 2021 WL 2661841, at *1–2 (W.D. Pa. June 29, 2021) (finding that a defendant failed to show that he was entitled to compassionate release where the defendant asserted that he was obese, but where he had also: (1) declined to be vaccinated and (2) failed to give any "indication that his decision to refuse the vaccine was based upon a religious reason or a medical reason such as an allergy").[7] Therefore, when the Court considers Jeffers' unexplained refusal to be vaccinated, coupled with the current state of his medical conditions, the Court finds that he has not shown that he is entitled to compassionate release.

Indeed, turning to Jeffers' averments regarding hypertension, he states that he "has exhibited high blood pressure and has a family history of hypertension." (ECF No. 372 at 8). However, Jeffers has not included any evidence that he has, in fact, been diagnosed with hypertension, nor has he shown any complications or restrictions resulting from high blood pressure. (ECF Nos. 372, 376, 384, 385). Further, there is no evidence that, if Jeffers has been diagnosed with hypertension, his condition would not be controllable with medication. (ECF Nos. 372, 376, 384, 385). Therefore, Jeffers' averments related to his potential hypertension,

---

[7] The Court also notes that Jeffers has previously contracted COVID-19. (ECF No. 382 at 3). He was placed in isolation and was seemingly asymptomatic with no to "minimal symptoms noted, voiced, or reported." (*Id.*). Accordingly, Jeffers' previous infection likely provides him some degree of protection from repeat infections. *Reinfections and COVID-19*, Ctr. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html#:~:text=After%20recovering%20from%20COVID%2D19,learning%20more%20about%20these%20reinfections (last visited Dec. 19, 2022).

especially when considered in light of his unexplained refusal to be vaccinated, do not constitute extraordinary and compelling reasons in support of compassionate release. *United States v. Bednarski*, No. 1:19-CR-20(2), 2022 WL 80080, at *5 (W.D. Pa. Jan. 7, 2022) ("[F]ederal courts routinely hold that compassionate release is not warranted where there is no indication a defendant's high blood pressure cannot be properly controlled with medication or other medical care.") (internal quotations omitted) (quoting *United States v. Gonzalez*, No. 14-CR-00015, 2021 WL 662496, at *2 (E.D. Pa. Feb. 19, 2021)).

Finally, turning to Jeffers' averments that he is overweight, (ECF No. 372 at 8), Jeffers is 5 feet, 11 inches tall, (ECF No. 249 at 18) and as of July 14, 2020, he weighed 212.8 pounds. (ECF 372-5). At this weight, Jeffers has a BMI of 29.7, which is considered overweight according to the CDC. *Adult BMI Calculator*, CTR. FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html (last visited Dec. 19, 2022). The CDC states that being overweight can make you more likely to get "very sick from COVID-19." *People with Certain Medical Conditions*, CTR. FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Dec. 19, 2022).

However, there is no record evidence that Jeffers cannot provide self-care in the prison environment, (ECF Nos. 372, 376, 384, 385), and Jeffers' unexplained refusal to take the comparatively minor step of being vaccinated against COVID-19 undercuts his argument that this Court should take the drastic step of releasing him from prison given his medical conditions. Therefore, especially in light of Jeffers' unexplained refusal to be vaccinated, the Court finds that Jeffers' weight is not an extraordinary and compelling reason warranting compassionate release.

*Smith*, 2021 WL 2661841, at *1–2 (finding that a defendant failed to show that he was entitled to compassionate release where the defendant asserted that he was obese, but where he had also: (1) declined to be vaccinated and (2) failed to give any "indication that his decision to refuse the vaccine was based upon a religious reason or a medical reason such as an allergy").

Accordingly, the Court finds that Jeffers' medical conditions in light of COVID-19, especially when coupled with his unexplained refusal to be vaccinated do not rise to the level of extraordinary and compelling reasons to justify compassionate release.

### b. Jeffers has Failed to Show that his Risk of Recontracting COVID-19 at USP Lee is More than Speculative

The Court now turns to whether Jeffers faces a non-speculative risk of recontracting COVID-19 at USP Lee.

At the outset, the Court notes that generalized concern regarding the existence of COVID-19 is not an extraordinary and compelling reason for compassionate release. *See Raia*, 954 F.3d at 597 (stating that the possibility of the virus spreading to a particular prison does not justify compassionate release, especially because of the BOP's statutory role and its extensive efforts to curtail the virus's spread); *United States v. Howard*, No. 13-CR-135, 2020 WL 6383243, at *1 (W.D. Pa. Oct. 30, 2020) (stating that "generalized COVID-19 related risks that apply to all inmates are insufficient to warrant relief").

Turning to USP Lee in particular, the facility has a total population of 1,487 male inmates. *USP Lee*, Fᴇᴅ. Bᴜʀᴇᴀᴜ ᴏꜰ Pʀɪꜱᴏɴꜱ, https://www.bop.gov/locations/institutions/lee/ (last visited

Dec. 19, 2022). It is currently at Level 2 Operations,[8] with 0 COVID-positive inmates and 2 COVID-positive staff members. *COVID-19*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Dec. 19, 2022). To date, there have been no COVID related deaths at USP Lee. *Id.* Further, 974 inmates and 231 staff members at the facility are fully vaccinated. *Id.* Therefore, given the low number of cases at USP Lee and the high vaccination rate at the facility, the Court finds that Jeffers has failed to show that his risk of recontracting COVID-19 at USP Lee is more than speculative.

Accordingly, the Court holds that Jeffers has failed to show that there is an extraordinary and compelling reason for his compassionate release.[9] Therefore, the Court need not address the Section 3553(a) factors, and the Court will deny Jeffers' motion. *United States v. Briston*, No. 05-CR-321, 2022 WL 5109085, at *8 (W.D. Pa. Oct. 5, 2022) (where an inmate does not show an

---

[8] At level 2 operations, no modifications to the facility's operations are necessary if social distancing is followed. *COVID-19 Modified Operations Plan & Matrix*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp (last visited Dec. 19, 2022).

[9] The Court also finds that the present state of the COVID crisis—namely the Delta and Omicron variants—does not constitute an extraordinary and compelling reason to grant Jeffers' request for compassionate release.

Jeffers argues that the Delta and Omicron variants are more contagious than the original variant of COVID-19, and that the Delta variant might cause more severe illness. (ECF No. 372 at 9–10). However, the "coronavirus pandemic, on its own, cannot and does not constitute an extraordinary and compelling reason to justify compassionate release." *United States v. Bednarski*, No. 1:19-CRIM-20(2), 2022 WL 80080, at *4 (W.D. Pa. Jan. 7, 2022). Further, courts have consistently recognized that new strains of COVID-19 do not change the impact of the vaccine on an inmate's motion for compassionate release. *United States v. Rogriguez*, No. 15-CR-566, 2022 WL 3371316, at *6 (E.D. Pa. Aug. 16, 2022) (collecting cases). Therefore, Jeffers' unexplained refusal to be vaccinated, which would offer him at least some protection against severe illness in the event that he contracts the Delta or Omicron variant of COVID-19, significantly undermines his argument that the new variants warrant compassionate release.

extraordinary and compelling reason for his compassionate release, "there is no need to address the § 3553(a) factors").

## IV.   Conclusion

"Once a court imposes a sentence and it becomes final, it may not be modified unless an exception to the rule of finality applies in the case." *United States v. Grace*, No. 17-CR-144, 2021 WL 5647788, at *7 (W.D. Pa. Nov. 30, 2021). Here, Jeffers did not establish that an extraordinary and compelling reason warrants his compassionate release from imprisonment. Therefore, the Court denies Jeffers' pro se "Motion to Reduce Sentence Pursuant to the First Step Act of 2018" (ECF No. 369-2) and his counseled "Motion to Reduce Sentence Pursuant to 18 U.S.C. 3582(c)(1)(A)(i)[.]" (ECF. No. 372). This denial is without prejudice in the event Jeffers' circumstances and/or the conditions of his confinement change.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No. 3:08-cr-16 |
| | ) | |
| v. | ) | |
| | ) | JUDGE KIM R. GIBSON |
| ARIEL L. JEFFERS, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

**AND NOW**, this ____ day of January, 2023, upon consideration of Defendant's pro se "Motion to Reduce Sentence Pursuant to the First Step Act of 2018" (ECF No. 369-2) and counseled "Motion to Reduce Sentence Pursuant to 18 U.S.C. 3582(c)(1)(A)(i)" (ECF No. 372), and for the reasons set forth in the foregoing Memorandum Opinion, **IT IS HEREBY ORDERED** that both Motions (ECF No. 369-2; ECF No. 372) are **DENIED WITHOUT PREJUDICE.**

BY THE COURT:

KIM R. GIBSON
UNITED STATES DISTRICT COURT

- 24 -